**IN THE UNITED STATES DISTRICT COURT OF MARYLAND**
**Greenbelt Division**

| | |
|---|---|
| Alexis Kennon ) | |
| 8736 Cumbria Court ) | |
| Fort Washington, MD 20744 ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| v. ) | |
| ) | |
| Waldorf Ford, Inc. ) | |
| 2440 Crain Highway ) | |
| Waldorf, MD 20601 ) | JURY TRIAL DEMAND |
| ) | |
| Serve Resident Agent: ) | |
| The Corporation Trust, Incorporated ) | |
| 2405 York Road ) | |
| Suite 201 ) | |
| Lutherville Timonium, MD 21093 ) | |
| ) | |
| Defendant. ) | |

**VERIFIED COMPLAINT**

Alexis Kenon, hereinafter referred to as Plaintiff, through undersigned counsel, hereby files this Verified Complaint against Waldorf Ford, Inc., hereinafter Defendant, referred to collectively as the ("parties"), and states the following in support thereof:

**PARTIES**

1. The Plaintiff is an adult who is a resident of Maryland and currently resides at 8736 Cumbria Court, Fort Washington, Maryland 20744.

2. Defendant Waldorf Ford, Inc. "Waldorf" is a corporation incorporated in the state of Maryland with a principal place of business at 2440 Crain Highway, Waldorf, MD 20601.

**JURISDICTION AND VENUE**

3. Plaintiff hereby incorporates paragraphs 1-2.

4. This Court has subject matter jurisdiction pursuant to 28 USC §1331 and 15 USC §1681(p).

Page **1** of 8

Doc ID: ea2220115868ea79c507d2fc86a65aa65f0986a9

5. This Court has supplemental jurisdiction of Plaintiff's state law claim(s) pursuant to 28 USC §1367, as applicable.

6. This Court has venue pursuant to 28 USC §1391.

## FACTS

7. Plaintiff hereby incorporates paragraphs 1 through 3.

8. Defendant is in the business of selling automobiles to the general public, which involves running credit checks to obtain financing options.

9. On December 15, 2023 around 12:00 am, Plaintiff saw and advertisement on Carfax.com for the sale of a 2018 Alfa Romero Giulia, with 42,951 miles and clean Carfax report. She then sent an email to Waldorf inquiring about the vehicle.

10. On December 15, 2023 at 9:14 am Plaintiff received a text message from Aiza Marquez from Waldorf explaining the vehicle was available and offered the Plaintiff to come by and see the car the same day. The plaintiff was at work at that time and due to the sense of urgency, she asked if she could start the application process beforehand to see if she would be approved for the car. Weeks earlier, the Plaintiff had lost her previous vehicle last car in a rear-end collision and needed to return the rental vehicle she was using temporarily.

11. Upon completing the application, the Plaintiff was pre-approved via text message by Aiza Marquez for a 2018 Alfa Romero Giulia "Vehicle" with a $2,000 required down payment.

12. On December 16, 2023, Plaintiff visited Defendant's business for the purpose of purchasing the Vehicle and took possession that same day.

13. Upon arrival, Plaintiff met with Caleb Davis, Defendant's salesman. Plaintiff test drove the Vehicle, and the only indicator light was on was the yellow A with a circle around it on the lower cluster. Plaintiff asked Caleb about it and was told it was the automatic start and stop Eco saver power feature and suggested Plaintiff keep the feature off and the light will go off.

Doc ID: ea2220115868ea79c507d2fc86a65aa65f0986a9

14. Caleb informed Plaintiff he had obtained financing for her from Flagship Credit Acceptance, LLC, "Flagship" but she now had to make a down payment of $3,010.00 and purchase insurance.

15. Upon Defendant's representation that Plaintiff was approved for financing, Plaintiff provided all the required paperwork to finalize the sale with "Preston," the finance manager.  Plaintiff and Preston went into his office where he read her the terms and conditions, signed the documents, put all the documents on a USB and then collected the down payment.

16. On December 21, 2023, Preston called Plaintiff to inform her that she needed to contact Flagship to complete her welcome letter, and to finalize the loan by verifying her information on the application. She did this on or about December 27, 2023.

17. Flagship then informed Plaintiff that they were waiting for her employer verification and that she would need to wait for welcome information in the mail along with her account number.

18.  Sometime thereafter, Plaintiff contacted Caleb regarding an extended warranty offered on the Vehicle. Caleb mentioned Preston (finance manager) would need to get the information to her but, he would pass the information to him.

19. Caleb then called Plaintiff to tell her he was terminated by Defendant and that he didn't think Preston was going to contact the Plaintiff regarding her extended warranty because their entire team was fired and replaced. He also mentioned he wanted to inform his customers of the drastic change of events.

20. Plaintiff became concerned and called Defendant to confirm finalization of financing with Flagship, but the reception kept forwarding her to an empty desk.

21. Plaintiff reached out to Flagship to pay the Vehicle monthly installment early but was informed by the receptionist they couldn't find her file and that she should contact the Defendant.

22. Plaintiff continued to call Defendant daily without any response.  Plaintiff decided to call another Ford dealership in Arlington, VA to speak to their financing department. The financing

Doc ID: ea2220115868ea79c507d2fc86a65aa65f0986a9

manager who works told Plaintiff "You tell those assholes to get on the phone if they want to get paid". Then he said, "You need the General Sales Manager, he's over all those guys over there".

23. Plaintiff hung up and immediately called Defendant and asked the same receptionist as before for the general sales manager and was connected to "Alashair." Alashair asked Plaintiff if she had the Vehicle to which Plaintiff responded in the affirmative.

24. Plaintiff was then connected to "Milek," the general finance manager. Milek mentioned he knew nothing about the sale of the Vehicle or the financing, but was also upset Defendant did not get paid for the Vehicle. Milek said he would contact Flagship regarding her loan the next day. Plaintiff informed Milek that Preston had run her credit around 5 times (Plaintiff only authorized it once) and she did not authorize further credit checks. Milek said he "had a few tricks up [his] sleeve" and would be in touch.

25. About two weeks later, Plaintiff reached out to Milek to follow up at which point she found out from Experian that she had new hard credit inquiries.  Upon information and belief, Milek ran Plaintiff's credit without her authorization before she called. Milek stated he's been trying to work on a loan for her but was having no luck. Plaintiff asked him about the status with Flagship since she already had the approval. Milek mentioned her credit score wasn't as high and some creditors wanted more money down, a cosigner, or a higher monthly payment.  He felt the results he received were so ridiculous he wasn't going to present that offer to Plaintiff.

26. Plaintiff urgently needed a car because she needed transportation to her physical therapy appointments.

27. Plaintiff called Flagship and spoke with manager Chris Mcgreevly to check on the status of the loan and he informed her the loan expired on January 15, 2024 but had extended it a few days more to receive additional documents from Defendant.  While Plaintiff was on the phone with

Doc ID: ea2220115868ea79c507d2fc86a65aa65f0986a9

Mcgreevly, Experian.com sent 5 auto financing inquiry alert emails to Plaintiff.

28. Plaintiff confronted Malek with the information obtained from Mcgreevly and when Malek called Plaintiff back the next day he informed her that he was unable to speak with Mcgreevly and that she would need to return the Vehicle if she was not approved for financing.

29. The next day, Milek informed Plaintiff Flagship requested her original documents back, but he can only send it through the mail. Milek also mentioned if Flagship may not approve Plaintiff for a new application for the Vehicle because her credit score was lower credit, the score wasn't like before, so they couldn't do to a new application for the same car.

30. Two weeks later, Plaintiff found out from Flagship that Milek had sent her paperwork to the wrong Flagship location in Texas and Plaintiff continued to receive additional alerts of new credit inquiries from Defendant.

31. The following week Milek emailed and request Plaintiff either purchase another vehicle or bring the Vehicle back. Milek offered to refund Plaintiff's $3,010.00 down payment.

32. As a result of Defendant's 25 inquiries, with 24 being unauthorized, Plaintiff's credit score dropped 121 points. Plaintiff received several credit denial letters from creditor for new financing applications. Despite Plaintiffs' request, Defendant has failed to remove the inquiries.

33. On February 14, 2024, Plaintiff purchased a 2022 Acura IXL at Darcars Kia in Temple Hills, Maryland. Due to the recent drop in Plaintiff's credit, she wasn't eligible for a loan with any outside banks or needed a cosigner and more cash down. Plaintiff's car note was higher and required a larger down payment of $4,500.00.

34. On February 17, 2024, Plaintiff returned the Vehicle to Defendant.

### COUNT I: VIOLATION OF 15 USC §1681, et seq.

35. Plaintiff hereby incorporates paragraphs 1 through 31.

36. Pursuant to 15 USC §1681(a), Plaintiff is a "consumer."

Doc ID: ea2220115868ea79c507d2fc86a65aa65f0986a9

37. Pursuant to 15 USC §1681(a), Plaintiff's credit report obtained by Defendant is a "consumer report."

38. Pursuant to 15 USC §1681(b)(f), A person shall not use or obtain a consumer report for any purpose unless: "(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance… with  [15 USCS §1681e] through a general or specific certification."

39. Pursuant to 15 USC §1681(n), willful noncompliance with 15 USC §1681 et seq. shall cause liability to the affected consumer for actual damages or statutory damages not less than $100 and not more than $1000, punitive damages, case expenses and reasonable attorney's fees.

40. Pursuant to 15 USC §1681(o), negligent noncompliance with 15 USC §1681 et seq. shall cause liability to the affected consumer for actual damages, case expenses and reasonable attorney's fees.

41. Defendant has violated 15 USC §1681(b)(f) because it was not authorized to obtain Plaintiff's credit report past the first credit check that Plaintiff authorized. Plaintiff specifically instructed Defendant that she did not authorize additional credit checks.

42. Despite Plaintiff's express instructions to not run her credit, Defendant willfully and/or recklessly and/or maliciously ran about 25 credit inquiries on Plaintiff's consumer report(s).

43. As a result of Defendant's multiple credit checks, Plaintiff's credit score decreased over 100 points, and she was only able to obtain alternate financing with a higher interest rate.

44. Defendant is liable for Plaintiff's actual damages, punitive damages, case expenses and reasonable attorney's fees.

**WHEREFORE**, the Plaintiff prays unto this Honorable Court:

A.  That it enter judgment against Defendant for violation of Pursuant to 15 USC §1681;

B.  That it award the greater of actual damages or statutory damages to Plaintiff;

Doc ID: ea2220115868ea79c507d2fc86a65aa65f0986a9

C. That it award Plaintiff reasonable attorney's fees;

D. That it award Plaintiff punitive damages if Defendant's violations were willful; and

E. That it grant such other relief that this Honorable Court deems just and appropriate.

### COUNT II: UNFAIR OR DECEPTIVE TRADE PRACTICES

45. Plaintiff hereby incorporates paragraphs 1 through 44.

46. MD Code, Commercial Law §13-303 prohibits any unfair, abusive, or deceptive trade practice.

47. Pursuant to MD Code, Commercial Law §13-303, Defendant is involved in the sale of consumer goods when they sold Plaintiff the Vehicle.

48. MD Code, Commercial Law §13-301 prohibits false or misleading oral or written statements, visual descriptions, or other representation that has the tendency or effect of deceiving or misleading consumers.

49. MD Code, Commercial Law §13-301 prohibits "deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression or omission of any material fact with the intent that the consumer relies on the same in connection with" the sale of any consumer good.

50. Defendant made false or misleading statements to the Plaintiff when it promised to obtain financing approval with the original credit application, because instead, it ran multiple unauthorized credit checks to obtain financing approval.

51. Pursuant to Md. Transportation Code Ann. § 15-311.3, Defendant committed deceptive trade practices when it failed to provide Plaintiff notice of denial or approval of her financing application within four days.

52. Plaintiff has been injured by Defendant's actions, and suffered damages, including, but not limited to, damage to her credit, compensatory damages, attorney's fees, and emotional distress, as a result of Defendant's deceptive trade practices and statements.

Doc ID: ea2220115868ea79c507d2fc86a65aa65f0986a9

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

F.  Enter judgment against Defendant for its unfair and deceptive trade practices;

G.  Order Defendant to take possession of the Vehicle and refund the purchase price, taxes and insurance and associated costs to Plaintiff;

H.  Award Plaintiff monetary damages;

I.  Award Plaintiff reasonable attorney's fees and costs; and

J.  Any other relief that this Honorable Court deems just and appropriate.

**I HEREBY SWEAR AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING IS TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.**

*Alexis Kenon*
_____
Alexis Kennon

Respectfully submitted,

**The Valle Law Firm, LLC**

_/s/ Diana C. Valle_____
Diana C. Valle, Esq., Fed Bar 18377
3 Bethesda Metro Center, Ste 700
Bethesda, MD 20814
Phone: 240-744-7410
diana.valle@vallelawfirm.com

*Counsel for Plaintiff*

Doc ID: ea2220115868ea79c507d2fc86a65aa65f0986a9