IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEXIS KENON                            :
                                        :
                                        :
   v.                                   :   Civil Action No. DKC 24-1793
                                        :
WALDORF FORD, INC.                      :
                                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Fair Credit Reporting Act ("FCRA") case are the motion to dismiss filed by Defendant Waldorf Ford, Inc. ("Waldorf Ford" or "Defendant") (ECF No. 4), and the motion for leave to file an opposition to the motion to dismiss filed by Plaintiff Alexis Kenon ("Plaintiff") (ECF No. 10). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion for leave to file an opposition will be granted and Defendant's motion to dismiss will be granted in part and denied in part.

**I.  Background**

   **A. Factual Background[1]**

On December 15, 2023, at approximately 12:00 a.m., Plaintiff saw an advertisement on Carfax.com for the sale of a 2018 Alfa

---

[1] The following facts are set forth in the complaint and construed in the light most favorable to Plaintiff.

Romeo Giulia (the "Vehicle") with 42,951 miles on it located at Waldorf Ford. (ECF No. 1 ¶ 9). Plaintiff emailed Defendant to inquire about the Vehicle's availability. On December 15, 2023, at approximately 9:14 a.m., Plaintiff received a text message from Aiza Marquez, an agent of Waldorf Ford, who explained that the Vehicle was available, and that Plaintiff could go see the Vehicle that same day. (*Id.* ¶ 10). Plaintiff responded that she could not go to Waldorf Ford that day but asked if she could start the application process early to see if she would be approved for the Vehicle. (*Id.*). Plaintiff completed the application and received a text message from Aiza Marquez telling Plaintiff that she was pre-approved for the Vehicle and would be required to pay a $2,000.00 downpayment. (*Id.* ¶ 11).

On December 16, 2023, Plaintiff went to Waldorf Ford to purchase the Vehicle. Plaintiff test drove the Vehicle with Caleb Davis ("Mr. Davis"), a salesman. (*Id.* at ¶ 13). Mr. Davis informed Plaintiff that Defendant had obtained financing for her from Flagship Credit Acceptance, LLC ("Flagship"), but she was now required to make a downpayment of $3,010.00 and to purchase insurance. (*Id.* at ¶ 14). Plaintiff completed all the required paperwork to finalize the sale with someone named "Preston," Waldorf Ford's finance manager. Preston read the terms and conditions of the sale to Plaintiff, signed the documents, put all

the executed documents on a USB, and collected the down payment of $3,100.00.  (*Id.* at ¶ 15).

On December 21, 2023, Preston called Plaintiff and told her that she needed to contact Flagship to complete her welcome letter and to finalize the loan by verifying the information in her application.  (*Id.* at ¶ 16).

On or about December 27, 2023, Plaintiff contacted Flagship and verified the required information.  (*Id.*).  Flagship told Plaintiff that it was waiting for her employer verification and that she would need to wait for her welcome information and account number to come in the mail.  (*Id.* at ¶ 17).

Plaintiff contacted Mr. Davis regarding an extended warranty offered on the Vehicle.  Mr. Davis told Plaintiff that he would reach out to Preston to get that information for her.  Mr. Davis later called Plaintiff and told her that he was terminated by Waldorf Ford and that "he didn't think Preston was going to contact [her] regarding her extended warranty because their entire team was fired and replaced."  (*Id.* at ¶ 19).  After that, Plaintiff called Waldorf Ford to confirm the finalization of her financing with Flagship but was continuously forwarded to an empty desk.  (*Id.* at ¶ 20).  Plaintiff contacted Flagship to pay her monthly installment early but was told that Flagship could not locate her file and that she should contact Defendant.  (*Id.* at ¶ 21).

Plaintiff called Defendant daily but received no response. Plaintiff called another Ford dealership in Arlington, Virginia, to speak to their financing department. The finance manager at the Arlington location told Plaintiff that she needed to get in contact with the general sales manager at Waldorf Ford. (*Id.* at ¶ 22).

Plaintiff immediately called Waldorf Ford and asked to speak to the general sales manager. Plaintiff was connected to someone named "Alashair," who asked if Plaintiff had possession of the Vehicle to which Plaintiff responded in the affirmative. (*Id.* at ¶ 23). Alashair connected Plaintiff to someone named "Milek" or "Malek," the general finance manager. Milek told Plaintiff that he was unaware of the sale of the Vehicle or the financing, but he was upset that Waldorf Ford did not receive payment for the Vehicle. Milek said he would contact Flagship the next day regarding Plaintiff's loan. Plaintiff informed Milek that Preston had run her credit around five times, and that she did not authorize further credit checks. Milek told Plaintiff that he "had a few tricks up [his] sleeve" and that he would be in touch with her. (*Id.* at ¶ 24).

Roughly two weeks later, Plaintiff called Milek to follow up on the status of her loan, at which point she found out from Experian.com that she had new "hard" credit inquiries. Milek told Plaintiff that he was trying to get a loan for her but was having

4

no luck. Plaintiff asked Milek about the status of her loan with Flagship because she was already approved. Milek told Plaintiff that her credit score was not as high as some of the creditors wanted and that some creditors wanted more money down, a cosigner, or a higher monthly payment. Milek said he did not present those offers to Plaintiff because he felt that they were "ridiculous." (*Id.* at ¶ 25).

Plaintiff called Flagship and spoke with manager Chris Mcgreevly ("Mr. Mcgreevly"), who informed her that the loan expired on January 15, 2024, but that Mr. Mcgreevly had extended the deadline a few days to receive additional documents from Defendant. While Plaintiff was on the phone with Mr. Mcgreevly, she received five more auto financing inquiry alert emails from Experian.com.

Plaintiff contacted Milek to inform him of her conversation with Mr. Mcgreevly. When Milek called Plaintiff the next day he told her he was unable to speak to Mr. Mcgreevly and that Plaintiff would need to return the Vehicle if she was not approved for financing. The next day, Milek called Plaintiff again and told her that Flagship requested her original documents back but that he could only send them via mail. Milek also told Plaintiff that Flagship was unlikely to approve a new application for the Vehicle because Plaintiff's credit score had declined since she initially applied.

5

Two weeks later, Flagship told Plaintiff that Milek sent her paperwork to the wrong Flagship location. Plaintiff continued receiving alerts of new credit inquiries for Waldorf Ford.

The next week, Milek emailed Plaintiff asking that she either return the Vehicle or purchase another vehicle. Milek offered to refund Plaintiff's $3,010.00 down payment. In total, Defendant made twenty-five credit inquiries, twenty-four of which were unauthorized, dropping Plaintiff's credit score by 121 points. Plaintiff received several denial letters from creditors for new financing applications. Plaintiff requested that Defendant remove the inquiries, but it has not.

On February 14, 2024, Plaintiff purchased a 2022 Acura IXL from Darcars Kia in Temple Hills, Maryland. Due to the 121 point decrease in Plaintiff's credit, she was not "eligible for a loan with any outside banks or needed a cosigner and more cash down." Plaintiff's car note was higher and required an increased down payment of $4,500.00. On February 17, 2024, Plaintiff returned the Vehicle to Waldorf Ford.

### B. Procedural Background

Plaintiff filed a complaint on June 20, 2024 (ECF No. 1). On July 12, 2024, Defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (ECF No. 4). On July 30, 2024, Plaintiff filed a consent motion for time to extend the July 26, 2024 opposition deadline to August 9, 2024 (ECF No. 6), which was

granted on July 30, 2024 (ECF No. 7). On August 10, 2024, Plaintiff filed an opposition to Defendant's motion to dismiss (ECF No. 8), and an unopposed motion for leave to file her opposition (ECF No. 10).[2] Defendant replied on August 22, 2024 (ECF No. 11).

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint need only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[2] The opposition was filed only one day late, purportedly because of ongoing settlement discussions. As noted, Defendant does not oppose this motion and it will be granted.

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Mays, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

In reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023). The court may also consider documents attached to the complaint. *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Although the complaint refers generally to documents, none were attached, and Defendant did not attach anything to its motion to dismiss.

Plaintiff attached two exhibits to her response in opposition, her own declaration and a Retail Sale Contract between herself and Waldorf Ford which she argues is relevant to Count II. (ECF Nos. 8-1; 8-2). Plaintiff may not amend her pleading by attaching documents to her opposition. *See Lindsey-Grobes v. United Airlines, Inc.*, No. GJH-14-00857, 2014 WL 5298030, at *5 (D.Md. Oct. 14, 2014) ("An affidavit attached to an opposition to a motion to dismiss, however, is no place for [the plaintiff] to add material facts to a deficient complaint."). Similarly, Defendant attached an exhibit to its reply brief, the purchase

order for the Vehicle. (ECF No. 11-1). Because Defendant's exhibit is attached to its reply brief, there has been no opportunity for Plaintiff to challenge the authenticity of the document. *See Faulkenberry*, 670 F.Supp.3d at 249. Accordingly, at the motion to dismiss stage, the court will not consider documents outside the complaint.

**III. Analysis**

   **A. Count I: Violation of 15 U.S.C. § 1681**

In Count I, Plaintiff alleges that Waldorf Ford violated 15 U.S.C. § 1681b(f) by obtaining Plaintiff's credit report approximately twenty-four times without authorization, decreasing her credit score by 121 points. (ECF No. 1 ¶¶ 41-43). Defendant argues that Plaintiff fails to state a claim because it had a permissible purpose to obtain Plaintiff's consumer reports pursuant to 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(a)(3)(F)(i). (ECF No. 4-1, at 3).

   15 U.S.C. § 1681b(f) states:

> A person shall not use or obtain a consumer report for any purpose unless—
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

9

15 U.S.C. § 1681b(f). Section 1681b(a) enumerates the permissible circumstances under which a consumer reporting agency may furnish a consumer report, stating in relevant part:

> Subject to subsection (c), any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
> . . .
> (3) To a person which it has reason to believe-
>
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>
> . . .
>
> (F) otherwise has a legitimate business need for the information—
>
> (i) in connection with a business transaction that is initiated by the consumer . . . .

15 U.S.C. § 1681b(a). The United States Court of Appeals for the Fourth Circuit has instructed that § 1681b applies both to consumer agencies and to users. *Korotki v. Thomas, Ronald & Cooper, P.A.*, 131 F.3d 135, 1997 WL 753322, *2 (4th Cir. 1997) (Table). Thus, a user may obtain a consumer report for a permissible purpose enumerated in § 1681b. *See id.* (citing *Yohay v. City of Alexandria Emps.' Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987) (citing *Hanson v. Morgan*, 582 F.2d 1214, 1216 (9th Cir. 1978))).

Plaintiff argues, however, that 15 U.S.C. § 1681b(c) applies because she did not initiate the January 2024 credit transactions.

(ECF No. 8 at 3). Section 1681b(c) concerns credit transactions that are not initiated by the consumer:

> A consumer reporting agency may furnish a consumer report to any consumer pursuant to subparagraph (A) or (C) of subsection (a)(3) in connection with any credit or insurance transaction that is not initiated by the consumer only if—
>
> (A) The consumer authorizes the agency to provide such report to such person[.]

15 U.S.C. 1681b(c).

This court has explained:

> To state a claim for an improper use or acquisition of a consumer report, [a] [p]laintiff must plead the following elements: (1) that there was a consumer report; (2) that Defendant used or obtained it; (3) that Defendant did so without a permissible statutory purpose; and (4) that Defendant acted with the specified culpable mental state.

*Bolden v. McCabe, Weisberg & Conway, LLC*, No. 13-1265-DKC, 2013 WL 6909156, at *3 (D.Md. Dec. 31, 2013) (citations omitted). "To prevail on the theory of willful violation of the FCRA, the plaintiff must 'show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer.'" *Id.* at n.5 (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 900 (4th Cir. 2003) (internal citations omitted)).

Plaintiff alleges that she only authorized the first credit check that occurred in December and that the subsequent checks

were unauthorized. (ECF No. 1 ¶ 41). Plaintiff further alleges that in early January 2024, after she told Defendant she did not authorize additional credit checks, Defendant "willfully and/or recklessly and/or maliciously ran about 25 inquiries on Plaintiff's consumer report(s)." (ECF No. 1 ¶ 42).

Defendant contends that the "credit inquiries were undertaken to pursue financing for [P]laintiff's purchase of a vehicle[.]" (ECF No. 4-1, at 3-4). Defendant argues that the additional inquiries were necessary and permissible under 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(a)(3)(F)(i) because "the initial financing was not completed" and "[P]laintiff still wanted the vehicle." (ECF No. 4-1, at 3-4). Plaintiff responds that the December 15, 2023 transaction was initiated by Plaintiff and that Plaintiff believed it resulted in successful financing with Flagship. (ECF No. 8, at 4). Plaintiff contends that 15 U.S.C. § 1681b(c) applies because the January 2024 credit inquiries were unauthorized and separate from the December 15, 2023 transaction. (*Id.* at 3-4). Plaintiff contends that Defendant did not have a permissible purpose under 15 U.S.C. § 1681b(c).

The facts, taken in the light most favorable to Plaintiff, are that she initiated a credit transaction in December for which a credit inquiry was conducted by Defendant. Once that application for financing was approved by Flagship, however, there was no longer any need for further inquiries and the transaction was

12

complete. She denies initiating any credit transaction or authorizing further credit inquiries by Defendant in January.

Defendant cites to a decision from the United States District Court for the Eastern District of Wisconsin, *Long v. Bergstrom Victory Lane, Inc.*, 2018 WL 4829192 (E.D. Wis. 2018), to support its proposition that "Plaintiff's assertion that she did not authorize credit checks beyond an initial inquiry does not negate [Defendant's] permissible purpose." (ECF No. 4-1, at 4). In *Long*, the court held that defendant's decision to submit plaintiff's credit report to multiple financial institutions, despite plaintiff's instruction not to, was still a permissible purpose under FCRA § 1681b(a)(3)(A). *Id.* at *2. Defendant argues that similarly, it had permissible purposes to access Plaintiff's credit report multiple times despite Plaintiff's instruction not to access her credit report further. Unlike *Long*, however, Plaintiff alleges that Defendant told her she was approved for financing with Flagship on December 16, 2023, and that in January of 2024 Defendant accessed her credit report roughly twenty-four times without authorization. (ECF No. 1 ¶ 25). Because Defendant told Plaintiff she was approved, Defendant's permissible purpose pursuant to 15 U.S.C. § 1681b(a) ended on December 16, 2023. Plaintiff alleges she did not authorize further credit transactions so the only permissible purposes would be under 15

13

U.S.C. § 1681b(c). Defendant has not argued that any provision of 15 U.S.C. § 1681b(c) applies.

The motion to dismiss will be denied as to this count.

**B. Count II: Unfair or Deceptive Trade Practices**

In Count II, Plaintiff alleges that Defendant violated MD. Code, Comm. Law § 13-303 in two ways: (1) "when it promised to obtain financing approval with the original credit application, because instead, it ran multiple unauthorized credit checks to obtain financing approval" and (2) when it "failed to provide Plaintiff notice of denial or approval of her financing application within four days." (ECF No. 1 ¶¶ 50-51). Defendant argues that Count II should be dismissed because: (1) Defendant had permissible purposes to obtain Plaintiff's credit reports and (2) Plaintiff received timely notice of the outcome of her financing application. (ECF No. 4-1, at 6).

The Maryland Consumer Protection Act ("MCPA") prevents persons from "engag[ing] in any unfair, abusive, or deceptive trade practice . . . in . . . [t]he sale, lease, rental, loan, or bailment of any consumer goods[.]" Md. Code Ann., Com. Law § 13-303(1). Section 13-301 defines unfair, abusive, or deceptive trade practices, including:

> (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

14

>   . . . .
>
>   (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:
>   (i) The promotion or sale of any consumer goods, consumer realty, or consumer service;
>   (ii) A contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention; or
>   (iii) The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental[.]

Md. Code Ann., Com. Law § 13-301(1),(9).

The Maryland Transportation Code provides, in relevant part "A dealer shall notify a buyer in writing if the terms of a financing or lease agreement between a dealer and a buyer *are not* approved by a third-party finance source within 4 days of delivery of a vehicle to the buyer."  Md. Code Ann., Trans. § 15-311.3.  A violation of Md. Code Ann., Trans. § 15-311.3 by a dealer is "an unfair and deceptive trade practice under Title 13" of the Maryland Commercial Code.  *Id.* at 15-311.3(g).

Plaintiff's complaint alleges that "Defendant made false or misleading statements to [her] when it promised to obtain financing approval with the original credit application and, instead, ran multiple unauthorized credit checks to obtain financing approval." Defendant's argument that this claim fails because there were no unauthorized credit checks itself fails for the same reason Count

15

I survives. Plaintiff, however, has not pleaded adequate facts to support her claim that Defendant "failed to provide . . . notice of denial or approval of her financing application within four days." (ECF No. 1 ¶ 51). First, the statute does not require Defendant to provide notice of approval within four days, only denial. *See* Md. Code Ann., Trans. § 15-311.3. Second, Plaintiff alleges that she received the vehicle on December 16, 2023, and that, on the same day, Defendant represented that "Plaintiff was approved for financing" with Flagship. (ECF No. 1 ¶ 15). Because Plaintiff alleges Defendant told her that her financing application was approved, Defendant was not required to provide notice in writing pursuant to Md. Code Ann., Trans. § 15-311.3 within four days.

Accordingly, Defendant's motion to dismiss will be denied as to the portion of Count II alleging that it ran multiple unauthorized credit checks despite making promises to the contrary. However, Defendant's motion will be granted as to the portion of Count II alleging a violation Md. Code Ann., Trans. § 15-311.3.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion for leave to allow late filing will be granted, and Defendant's motion to dismiss will be granted as to the portion of Count II alleging a

16

violation of Md. Code Ann., Trans. § 15-311.3 and denied as to all other counts.  A separate order will follow.

                                              /s/
                                  DEBORAH K. CHASANOW
                                  United States District Judge